UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────

DARRIN SINGLETON,

          **DECISION AND ORDER**

       Petitioner,         **No. 05-CV-6030**

   -vs-

MICHAEL E. GIAMBRUNO, Superintendent,
Wyoming Correctional Facility,

       Respondent.
─────────────────────────────

## I. <u>INTRODUCTION</u>

*Pro se* petitioner, Darrin Singleton ("Singleton" or "Petitioner"), filed a timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his custody, pursuant to a judgment entered February 17, 1998, in Monroe County Court, following a jury trial, convicting him of two counts of burglary in the first degree (Penal Law §§ 20.00, 140.30[1],[4]) and two counts of attempted robbery in the first degree (Penal Law §§ 20.00, 110.00, 160.15[2],[4]).

For the reasons set forth below, this petition is denied.

## II. <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

      By indictment number 541A/97, filed August 15th 1997 by a Monroe County Grand Jury, Petitioner was indicted with two counts of burglary in the first degree, two counts of attempted robbery in the first degree, unauthorized use of a motor vehicle in the first degree, and criminal possession of a weapon in the second degree,

-1-

arising out of the following incident. (T. 2)[1]. In the late evening, early morning hours of April 26, 1997 Petitioner and two other men, Lawrence Grady and Demetrius Herring, drove to and parked behind a restaurant near 162 Fulton Avenue in Rochester, New York, with the intention of purchasing marijuana at the residence at 162 Fulton Avenue. (T. 108-9, 393). When they arrived at the location, after knocking on the door, Carmen Ortiz, the downstairs resident, came to the front door. (T. 165). Brian Brown, another downstairs resident, a woman called Twin, and 6 sleeping children were also in the apartment at this time. (T. 159-60). Ortiz told the three men to go to the side window of the house to purchase marijuana and closed the door. (T. 118). Herring then forced the door open and the three men entered the home. (T. 120). Petitioner and Herring were both armed with guns. (T. 122-124). At this time, Brian Brown ran to the back hallway of the residence which connected through a back stairway to an upstairs apartment, occupied by Ortiz's mother, Darlene Bovee. (T. 166-167, 236). Brown informed Bovee that three men with guns had broken into the downstairs apartment, and Bovee called 911. (T. 236). Petitioner demanded money and marijuana from Ortiz, and searched through the apartment, while Herring pushed Ortiz to the ground and placed his hands over her mouth. (T. 122-3, 170-2). Meanwhile, Lawrence Grady observed the scene from the doorway in the front room. (T. 123).

---

[1]      "T." refers to the state court trial transcript.

Petitioner then informed Herring and Grady that the Police had arrived. (T. 124). The three men ran to the back of the apartment and down the back stairwell to the basement where Petitioner and Herring placed the two guns under a rug. (T. 125). Herring and Petitioner then told Grady to go get the guns. (T. 125). Grady retrieved the guns and went back upstairs to the upstairs apartment where he encountered Darlene Bovee and pointed a gun at her, at which time she slammed her door shut. (T. 127). Grady then ran downstairs and threw the two guns in a garbage can. (T. 128).

At that time, Officer Timothy Waterman arrived at the location on Fulton Avenue. (T. 246). Officer Waterman observed that the front door was open, heard noises in the back of the house, and walked to the rear of the building where he observed two men exiting the back door. (T. 246-50). One of the men, identified as the Petitioner, approached Officer Waterman, who ordered Petitioner to get on the ground. (T. 251). Officer Waterman frisked Petitioner, and another officer, Officer Correa, took Petition into custody while Waterman and another police lieutenant took custody of Herring and Grady. (T. 252-56). Officer Waterman then searched the apartment and found the two guns in the garbage can where Grady had placed them. (T. 257).

At a show-up identification, Ortiz and Brown identified the Petitioner, and the other two men. (T. 179-182, 222). Grady, Ortiz,

Brown and Waterman also made in-court identifications of Petitioner. (T. 108, 169, 217, 251).

At trial, Petitioner testified on his own behalf that he had not participated in the burglary and attempted robbery, but had been at the location merely to purchase marijuana. (T. 393). Petitioner denied any involvement in the burglary and attempted robbery. (T. 411).

At the conclusion of the trial, defense counsel requested an expanded eyewitness identification charge. (T. 466-7). The trial court rejected the charge as unnecessary because the case was not an alibi case and there was other evidence placing the Petitioner at the scene of the crime. (T. 467). The jury found the Petitioner guilty of two counts of burglary in the first degree and two counts of attempted robbery in the first degree. (T. 599).[2]

Petitioner appealed his conviction to the Appellate Division, Fourth Department, alleging error due to the trial court's failure to give an expanded identification charge, and the trial court's failure to instruct the jury that the issue of identity must be proven beyond a reasonable doubt. People v. Singleton, 286 A.D. 2d 877 (4th Dept. 2001). The Fourth Department unanimously affirmed Petitioner's conviction reasoning that because the defendant did not present an alibi defense, and because the case was not a "close

---

[2]    In the interest of justice, the court did not submit to the jury the charges of unauthorized use of a motor vehicle in the first degree or criminal possession of a weapon. (T. 469).

question of identity," the court did not err in denying Petitioner's request for an expanded identification charge. Id. In addition, the Fourth Department held that the trial court properly instructed the jury to find beyond a reasonable doubt that the defendant committed the crimes charged, and that this standard applied equally to issues of identification. Id. Petitioner then sought leave to appeal to the New York Court of Appeals which was denied. People v. Singleton, 97 N.Y. 2d 658 (N.Y. 2001).

Additionally, while Petitioner's appeal was pending, he filed a motion to vacate his conviction in Monroe County Court pursuant to New York Crim. Proc. Law ("C.P.L.") §440.10 claiming (1) ineffective assistance of trial counsel, and (2) newly discovered evidence derived from the Prosecutor's failure to produce favorable evidence pursuant to Brady v. Maryland, 373 U.S. 83.[3] In a Memorandum and Order dated February 16, 2001 (Mem. and Ord. 02/16/01), the trial court held that Petitioner's first claim lacked sufficient factual support, and his second claim was procedurally barred under C.P.L. §440.10(2)(c), as it was an issue of record and he did not raise it on direct appeal. Petitioner appealed this order to the Appellate Division, Fourth Department, which unanimously affirmed the order reasoning that the Petitioner

---

[3]    The substance of Petitioner's ineffective assistance of counsel Brady violation claims involved the failure of defense counsel to discover, and the failure of the prosecutor to turn over the guilty plea of co-defendant Herring, which contained a statement by Herring that was favorable to Petitioner.  Petitioner claimed that Herring's plea was newly discovered evidence that would have affected the verdict.

-5-

could have discovered the favorable evidence with due diligence under C.P.L. 440.10 (1)(g), and that Petitioner did not adequately provide support his claim of ineffective assistance of counsel. People v. Singleton, 1 A.D. 3d 1020 (4th Dept. 2003). Additionally, the court found, on the merits, that a Brady violation did not occur, despite the exculpatory nature of the evidence, as the state is not required to turn over evidence that the defendant knows or should reasonably know exists. Id. Further leave to appeal this order was denied. People v. Singleton, 1 N.Y.3d 580 (N.Y. 2003).

Petitioner then filed a motion for a writ of error *coram nobis* based on ineffective assistance of appellate counsel. This motion and further leave to appeal were denied. People v. Singleton, 302 A.D.2d 1020 (4th Dept. 2003), *lv. denied* 99 N.Y.2d 658 (N.Y. 2003). Petitioner last filed a second motion pursuant to C.P.L. 440.10 in Monroe County Court claiming that the judgment was procured by fraud or duress by the prosecutor and that the prosecutor's actions prevented a prospective defense witness from testifying. In a Decision and Order dated September 24, 2004 (Mem. and Ord. 09/24/04), the court denied the motion based on insufficient factual support and because the allegations were substantially similar to those decided on Petitioner's first 440.10 motion. Leave to appeal this order was denied by the Fourth Department on January 19, 2005.

## III. GENERAL PRINCIPLES APPLICABLE TO HABEAS REVIEW

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254 (d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently that [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F. 3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also id.</u> at 408-410. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted). Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in

light of the evidence presented in the state-court proceeding."
Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a
person in custody pursuant to a judgment of a State court shall not
be granted unless it appears that...the applicant has exhausted the
remedies available in the courts of the State..." 28 U.S.C.
§2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838,
843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828
(2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S.Ct. 1436 (1995).
"The exhaustion requirement is not satisfied unless the federal
claim has been 'fairly presented' to the state courts." Daye v.
Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert.
denied, 464 U.S. 1048 (1984).

**C.    The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has
defaulted his federal claims in state court pursuant to an
independent and adequate state procedural rule, federal habeas
review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724,
729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A
habeas petitioner may bypass the independent and adequate state
ground bar by demonstrating a constitutional violation that
resulted in a fundamental miscarriage of justice, i.e., that he is
actually innocent of the crime for which he has been convicted."

Id. (Citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the independent and adequate state law groud] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has obseverved that "it is not the case 'that the procedural-bar issue must invariable be resovled first; only that is ordinarily should be[,]'" (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law")).

## IV. PETITIONER'S CLAIMS

## 1. Improper Jury Instructions

Petitioner claims that the trial court erred in failing to give and expanded identification charge and improperly instructed the jury as to the reasonable doubt standard for identification. Pet. ¶ 12C.[4] Petitioner raised this claim on appeal to the Appellate Division, Fourth Department, which held that the trial court did not err in instructing the jury as to standard of guilt

---

[4]    "Pet." refers to Singleton's petition for a writ of habeas corpus.

for identification, and that an expanded identification charge was not warranted in this case.

The Second Circuit has consistently held that, "[i]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." Davis v. Strack, 270 F.3d 111 (2nd Cir. 2001) (Citing Casillas v. Scully, 769 F.2d 60, 63 (2d Cir.1985). In addition, in reviewing a claim that a jury charge is erroneous, the Court must review the jury instructions as a whole. "[A] challenged portion of the jury instructions 'may not be judged in artificial isolation,' but rather must be judged as the jury understood it, as part of the whole instruction, and indeed, as part of all the proceedings that were observed by the jury." Chalmers v. Mitchell, 73 F.3d 1262, 1267 (2d Cir. 1996) (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed.2d 368 (1973)). The review "must ... establish[ ] not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp, 414 U.S. at 146, 94 S. Ct. 396. The trial court has broad discretion to determine under what circumstances and how the charge

should be given.   <u>United States v. Civelli</u>, 883 F.2d 191, 195 (2d Cir. 1989).

Under New York State Law, an expanded identification charge is warranted in cases where the defendant presents and alibi defense or where there is a "close question of identity." <u>People v. Rogers</u>, 245 A.D.2d 1041 (4th Dept. 1997) (Citing <u>People v. Whalen</u>, 59 N.Y.2d 273 (N.Y. 1983)). However the determination of whether to give the charge is in the trial court's discretion and "[a] Judge who gives a general instruction on weighing witnesses' credibility and who states that identification must be proven beyond a reasonable doubt has made an accurate statement of the law." <u>Whalen</u>, 59 N.Y.2d 273, 279.

Petitioner challenges the state court's finding that the case was not an alibi case, and did not present a close call of identity to warrant the expanded charge. Pet. ¶ 12C.  Petitioner supports his claim by alleging that proper jury instructions on identity would have changed the result of the trial because the trial witnesses presented conflicting testimony and the victim's identification of the defendant was "questionable, vague and ambiguous." <u>Id.</u>  The Appellate Division held that the trial court adequately instructed the jury on the issue of identity, as required under New York State Law.  Petitioner has not shown that the state law determination was incorrect and should be overturned,

and he has not met his burden of showing that the jury charge violated a federal right.

Petitioner was identified in court by four trial witnesses, Carmen Ortiz, Brian Brown, Lawrence Grady, and Officer Timothy Waterman. All four witnesses testified that Petitioner was inside the house where the crime took place and Ortiz, Brown, and Grady testified that he participated in the crimes charged. The trial court instructed the jury that in order to find the defendant guilty, they must find that the evidence established his guilt beyond a reasonable doubt. (T. 534). The trial court also instructed the jury that the burden was on the People, that the defendant was presumed innocent, and that the jury should take all witness inconsistencies into account in making their determination. (T. 536, 539-40). Additionally, as to each crime, the trial court instructed the jury that they were required to find, beyond a reasonable doubt, that the defendant committed each element of the crime charged. (T. 546, 548, 550, 552). The Appellate Division held that this was sufficient to apprise the jury that the reasonable doubt standard applied to identity, and that witness testimony regarding identification and the lack of an alibi defense made an expanded identity charge unnecessary under New York Law. This Court agrees and finds that the jury instructions, as a whole, were not violative of New York State or Federal law to warrant habeas relief.

**2.   Newly Discovered Evidence and <u>Brady</u> Violations**

The Petitioner also claims that the trial court improperly denied his C.P.L. 440.10 motion to vacate his conviction in light of newly discovered evidence derived from a violation by the Prosecutor of his obligations under <u>Brady v. Maryland</u>. Pet. ¶ 12A. The substance of Petitioner's claim is that a statement made by co-defendant Herring in his guilty plea, that Petitioner was outside the house and did not know that the crime was occurring, should have been turned over to defense counsel by the Prosecutor and constitutes newly discovered evidence warranting habeas relief. <u>Id.</u>

Monroe County Court declined to afford Petitioner relief because his claim was barred from review under C.P.L. 440.10 (2)(c), as it was a matter of record which could have been, but was not, raised on appeal. Mem. and Ord. 02/16/01. The Appellate Division, Fourth Department affirmed the County Court's order, but reviewed the Petitioner's claims on the merits holding that the co-defendant's plea was not newly discovered evidence under C.P.L. 440.10 (1)(g) as it could have been produced at trial with due diligence and that it was not <u>Brady</u> material because, although exculpatory, the defendant "knew, or should reasonably have known of, the evidence and its exculpatory nature." <u>Singleton</u>, 1 A.D. 3d at 1020, *lv. denied* 1 N.Y.3d 580 (N.Y. 2003). This court finds that, because Petitioner failed to raise the issue on direct appeal, it is deemed exhausted and procedurally barred. See <u>Grey v.</u>

Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991); C.P.L. §410.10 (2)(c).
Petitioner has not established the requisite cause and prejudice or
a fundamental miscarriage of justice necessary to over come the
procedural bar. Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977); see
also Sawyer v. Whitley, 505 U.S. 333 (1992).  However, this Court
also agrees with the Appellate Division, that the claim fails on
the merits.

Under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.
Ed.2d 215 (1963), "suppression by the prosecution of evidence
favorable to an accused upon request violates due process where the
evidence is material either to guilt or to punishment." Brady, 373
U.S. at 87, 83 S. Ct. at 1196-1197; see United States v. Zackson,
6 F.3d 911, 917 (2d Cir. 1993). Evidence is material only if "there
is a reasonable probability that, had the evidence been disclosed
to the defense, the result of the proceeding would have been
different." Kyles v. Whitley, 514 U.S. 419, 433-34, 115 S. Ct.
1555, 1565, 131 L. Ed.2d 490 (1995).  Even if evidence is material
and exculpatory, it "is not 'suppressed'" by the government within
the meaning of Brady "if the defendant either knew, or should have
known, of the essential facts permitting him to take advantage of
any exculpatory evidence."  Zackson, 6 F.3d at 918 (quoting
United States v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982)).  In this
case, Petitioner could have obtained Herring's plea, but failed to
do so, through no fault of the Prosecutor.  The Petitioner obtained

the plea of co-defendant Grady, who testified at his trial, but neglected to obtain Herring's plea. While Herring's plea contained exculpatory statements, the Prosecutor did not "suppress" the evidence under Brady, as the Petitioner should have known of the exculpatory nature of his plea.

Petitioner's newly discovered evidence claim is also without merit. "A claim 'based on newly discovered evidence ha[s] never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" Ortega v. Duncan, 333 F.3d 102, 108 (2nd Cir. 2003) (quoting Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (citing Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), for the proposition that evidence that could not have been presented in the state proceedings "must bear upon the constitutionality of the applicant's detention"). Petitioner's claim must fail as the only constitutional violation alleged, the Brady violation discussed above, is without merit. Thus, Petitioner's due process rights have not been infringed so as to support a claim for newly discovered evidence. See Duncan 333 F.3d at 108.

## 3. Ineffective Assistance of Trial Counsel

Petitioner claims that he was denied effective assistance of trial counsel because his attorney did not conduct a proper investigation to obtain all factual information necessary to defend

Petitioner, particularly co-defendant Herring's guilty plea, and police records and 911 tapes containing inconsistent statements of trial witnesses.  Pet. ¶ 12B. Petitioner raised this issue in his C.P.L. 440.10 motion, and Monroe County Court denied the motion based on insufficient facts to support the claim.  Mem. and Ord. 02/16/01.  The Appellate Division, Fourth Department affirmed this decision. Singleton, 1 A.D. 3d at 1020, *lv. denied* 1 N.Y.3d 580 (N.Y. 2003).

The Sixth Amendment to the Constitution provides that the accused in a criminal trial shall have the assistance of counsel for his defense.  The right to counsel is fundamental to the criminal justice system; it affords the defendant the opportunity "to meet the case of the prosecution." Strickland v. Washington, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984). The appropriate Constitutional standard for assessing attorney performance is "reasonably effective assistance." Strickland, 466 U.S. at 687, 104 S. Ct. 2052.

To demonstrate constitutional ineffectiveness, "[f]irst, the defendant must show that counsel's performance was deficient." *Id.*, 466 U.S. at 687, 104 S.Ct. 2052.  To determine whether a counsel's conduct is deficient, "[t]he court must ... determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*, 466 U.S. at 690, 104 S.Ct. 2052.  In

gauging the deficiency, the court must be "highly deferential," must "consider[ ] all the circumstances," must make "every effort . .. to eliminate the distorting effects of hindsight," and must operate with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*, 466 U.S. at 688-89, 104 S.Ct. 2052. The Court must look at the "totality of the evidence before the judge or jury," keeping in mind that "[s]ome errors [] have ... a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture." *Id.* at 695-96, 104 S.Ct. 2052. Therefore, the Court considers these errors in the aggregate. *See* <u>Lindstadt v. Keane</u>, 239 F.3d 191 (2d Cir. 2001) (citing, *inter alia*, <u>Moore v. Johnson</u>, 194 F.3d 586, 619 (5th Cir. 1999) (holding that court should examine cumulative effect of errors committed by counsel across both the trial and sentencing)). If an attorney's error has no effect on the judgment, it is not a denial of effective assistance of counsel, and hence not a violation of the Sixth Amendment. <u>Strickland</u>, 446 U.S. at 691, 104 S. Ct. 2052.

Second, a habeas petitioner must demonstrate "that there is a 'reasonable probability' that, but for the deficiency, the outcome . . . would have been different[.]" <u>McKee v. United States</u>, 167 F.3d 103, 106 (2d Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 688, 104 S.Ct. 2052). "A reasonable probability is a probability sufficient to undermine confidence in the [trial's] outcome,"

Strickland, 466 U.S. at 688, 104 S. Ct. 2052; a defendant "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." *Id.*, 466 U.S. at 693, 104 S. Ct. 2052. Thus, even serious errors by defense counsel do not warrant granting federal habeas relief where the conviction is supported by overwhelming evidence of guilt.

After a review of the record, it is clear that trial counsel erred in not requesting the transcript of co-defendant Herring's guilty plea, as it contained statements that were exculpatory in nature. However, this error does not rise to the level of ineffective assistance of counsel required under Strickland. Trial counsel did obtain the guilty plea of the testifying co-defendant, Grady, and could have concluded, strategically, that the guilty plea of the non-testifying co-defendant would not have been exculpatory in nature and thus would not have aided in the defense. See Burton v. Phillips, 303 Fed.Appx. 954, 956, 2008 WL 5381236 (C.A.2 (N.Y.)).[5]  The Second Circuit has stated, "We will not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a 'significant potential downside.'" *Id.* (quoting *Sacco v. Cooksey*, 214 F.3d 270, 275 (2d Cir. 2000); citing *Bell v. Cone*, 535 U.S. 685, 701-02 (2002)). Thus, "'[a] lawyer's decision not to pursue a defense does not

        [5]     This assertion is supported by the fact that the testifying co-defendant's testimony and plea were corroborated by the testimony of two victims and that of the arresting officer.

constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision[.]'" *Id.* (qutoing *DeLuca v. Lord*, 77 F.3d 578, 588 n. 3 (2d Cir.1996)). Because trial counsel could have justified his failure to obtain Herring's plea by asserting that he believed it would add to the already substantial evidence pointing towards Petitioner's guilt, and because this evidence would likely have outweighed the effect of Herring's plea if introduced at trial, Petitioner's claim for ineffective assistance of counsel for this error is denied.

Petitioner's second claim that he received ineffective assistance of trial counsel because his attorney failed to obtain police records and 911 tapes containing inconsistent statements of witnesses also lacks merit. The record reveals that Petitioner's counsel made a written, pre-trial discovery request, in which counsel specifically requested any written or recorded statements by defendant and co-defendants, and any official reports or documents prepared with respect to the case. (T. 345-50). This request would include any police report and 911 tapes that were available. Defense counsel did not make any further request for these items, nor did he complain of Prosecutor's failure to produce these items. Counsel's use or non-use of these materials in preparation of Petitioner's defense is unknown to the Court, but, considering that the trial testimony of the victims and co-defendant Grady were consistent with each other, it can be

concluded that any introduction of an inconsistent statement made by a trial witness may not have altered the case. The jury could have concluded, in spite of an inconsistent prior statement, that the Petitioner was still guilty of the crimes charged. Thus, this Court holds that the Petitioner did not receive ineffective assistance of trial counsel under <u>Strickland</u>, because Petitioner has not shown that counsel's performance was actually deficient or that there was a reasonable probability that the outcome would have been different if counsel introduced any evidence contained in the 911 tapes or the police report.

## 4. Ineffective Assistance of Appellate Counsel

Petitioner next claims that he was denied effective assistance of appellate counsel because appellate counsel failed to raise the following issues on appeal: (1) ineffective assistance of trial counsel, (2) Prosecutor's failure to turn over <u>Brady</u> materials and statements of witness under <u>People v. Rosario</u>, 9 N.Y. 2d 286 (N.Y. 1961); and that appellate counsel had a conflict of interest and should not have taken Petitioner's appeal. Pet. ¶ 12D. Petitioner raised this claim in his writ of error *coram nobis* which was denied by the Appellate Division, Fourth Department on February 7, 2003. <u>People v. Singleton</u>, 302 A.D.2d 1020 (4th Dept. 2003), *lv. denied* 99 N.Y.2d 658 (N.Y. 2003).

<u>Strickland's</u> two-prong test applies to the evaluation of appellate counsel as well as trial counsel. <u>Clark v. Stinson</u>, 214

F.3d 315, 321 (2d Cir.2000), *cert. denied*, 531 U.S. 1116 (2001);
Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.1994); Claudio v.
Scully, 982 F.2d 798, 803 (2d Cir.1992). In addition, "in
attempting to demonstrate that appellate counsel's failure to raise
a state claim constitutes deficient performance, it is not
sufficient for the habeas petitioner to show merely that counsel
omitted a nonfrivolous argument, for counsel does not have a duty
to advance every nonfrivolous argument that could be made." Mayo v.
Henderson, 13 F.3d at 533 (citing Jones v. Barnes, 463 U.S. 745,
754 (1983)); see also Jameson v. Coughlin, 22 F.3d 427, 428
(2d Cir.1994) (holding that counsel made a "reasonable, strategic"
decision not to raise an argument based upon state law before the
New York Appellate Division). However, the Second Circuit has held
that the "failure by a state prisoner's attorney to raise a
'particularly strong' state law claim on direct appeal may
constitute ineffective assistance of counsel." Sellan, 261 F.3d at
310 (citing Mayo v. Henderson, 13 F.3d at 530-34 (holding on habeas
that petitioner was denied effective assistance of counsel when
appellate counsel failed to raise a Rosario claim that would
require per se reversal under prevailing New York case law)).

Here, Petitioner's appellate counsel did not raise
Petitioner's Brady or Rosario claims on direct appeal and did not
raise the claim of ineffective assistance of trial counsel.
However, Petitioner's Brady claim was fully addressed on the merits

by the Appellate Division, Fourth Department, on appeal from his
C.P.L. 440.10 motion, and found to be without merit.  Thus, while
appellate counsel could have raised this issue on direct appeal, it
is clear that the outcome of the appeal would not have been
different, since counsel merely refrained from presenting a less
than meritorious claim.  Thus, Petitioner has not shown that
counsel was deficient under <u>Strickland</u> and its progeny with respect
to his <u>Brady</u> claim.  While Petitioner also claims that appellate
counsel failed to raise a <u>Rosario</u> claim on direct appeal,
Petitioner merely mentions a "<u>Rosario</u> issue" without providing
sufficient facts with which to assess his claim.  In Petitioner's
memorandum of law in support of his writ of error *coram nobis*,
Petitioner states that appellate counsel erred in not raising the
<u>Rosario</u> issue with regard to Officer Nobles' report. (T. 301).  In
reviewing the record, it appears that trial counsel made a motion
for a mistrial based on the inability to review the report prior to
trial, and that the trial judge denied the motion, but also
prevented the Prosecutor from using the report to remedy the issue.
(T. 356-58).  As discussed above, it is not ineffective assistance
of counsel where appellate counsel does not raise every issue of
merit on appeal.  The Petitioner has not shown that appellate
counsel was deficient or that the outcome would have been different
with respect to this claim.  Therefore, his ineffective assistance

of counsel claim is denied with respect to counsel's failure to raise his _Rosario_ claim.

The Petitioner also claims ineffective assistance of appellate counsel because appellate counsel failed to initially recognize a conflict of interest, as trial counsel and appellate counsel were both employed by the Monroe County Public Defender's Office. Pet. ¶ 12D. However, this claim also lacks merit as the Monroe County Public Defender's Office requested that the Appellate Division, Fourth Department assign other counsel at the time Petitioner claimed ineffective assistance of trial counsel. (T. 310). The Fourth Department then assigned Attorney Michael P. Stacy to complete Petitioner's appeal. Petitioner cannot claim that his appellate counsel, the Monroe County Public Defender's Office, was deficient with respect to the conflict of interest, because they remedied the problem as soon as they were aware. (T. 309-10).

## 5. Prosecutorial Misconduct

The Petitioner claims he was denied due process based on the Prosecutor's failure to turn over co-defendant Herring's guilty plea and for preventing petitioner from calling Herring as a witness at trial. Petitioner raised these claims in his second motion to vacate the judgement pursuant to C.P.L. 440.10. Monroe County Court denied his motion as lacking factual support and because his claims were substantially similar to his first C.P.L. 440.10 motion for _Brady_ violations. (Mem. and Ord. 09/24/04). Leave

to appeal was also denied by the Appellate Division, Fourth Department.

The test for an alleged denial of due process based upon prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed.2d 78 (1982). "[P]rosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute 'egregious misconduct.'" Miranda v. Bennett, 322 F.3d 171, 180 (2d Cir. 2003) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974)). Prosecutorial misconduct warrants a reversal only when the effect is "so prejudicial that [it] render[s] the trial in question fundamentally unfair." Floyd v. Meachum, 907 F. 2d 347, 353 (2d Cir. 1990). (quoting Garfolo v. Coomb, 804 F.2d 201, 206m (2nd Cir. 1986)).

In this case, as discussed above, the Appellate Division, Fourth Department, held that the Prosecutor's failure to provide Petitioner with the plea of co-defendant Herring was not a violation of his obligations under Brady. The substance of Petitioner's prosecutorial misconduct claim is the same Brady violation for which his first C.P.L. 440.10 motion was denied. This court agrees with the Appellate Division, Fourth Department, that a Brady violation has not occurred, and that the prosecutor's error, if any, does not rise to the level required for federal habeas relief. In addition, the Petitioner's claim that the Prosecutor prevented co-defendant Herring from testifying at trial

is unsupported by the record, and is also meritless, as the Prosecutor cannot prevent the defendant in a criminal trial from calling a witness. The transcript of co-defendant Herring's guilty plea also does not suggest that he gave his plea in return for not testifying at trial. (T. Appendix D 40-51). Accordingly, this Court finds that the Petitioner's claims for federal habeas relief based on Prosecutorial misconduct must be denied.

## V. CONCLUSION

For the reasons stated above, petitioner's request for habeas relief pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Further, because the issues raised in the petition are not the type that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, this Court concludes that the petition presents no federal question of substance worthy of attention from the Court of Appeals and, therefore, pursuant to 28 U.S.C. § 2253 and Fed. R. App. P. 22(b), this Court denies a certificate of appealability. The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED:     Rochester, New York
           September 11, 2009